# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**FERGUSON-KUBLY INDUSTRIAL**
**SERVICES, INC.**

                            **Plaintiff,**

           **v.**                                           **Case No. 05-C-1208**

**CIRCLE ENVIRONMENTAL, INC.,**

                            **Defendant.**

---

# DECISION AND ORDER

---

On November 17, 2005, the plaintiff Ferguson-Kubly Industrial Services, Inc. ("Ferguson") filed its complaint seeking both an entry of declaratory judgment and injunctive relief. Ferguson's complaint arises out of the threatened termination of a dealership, which Ferguson contends is governed by the Wisconsin Fair Dealership Law ("WFDL"). (Compl. ¶ 1.) Ferguson claims that the defendant Circle Environmental, Inc. ("Circle") is attempting to terminate the parties' licensing agreement in violation of their mutual agreement and in contravention of Wisconsin law. (*Id.*)

In its complaint, Ferguson clarifies that the merits of the dispute between the parties must be resolved pursuant to an arbitration provision contained in their exclusive licensing agreement ("the Agreement"). (*Id.*) Thus, Ferguson does not seek relief, in this forum, from Circle's possible violation of the WFDL. Rather, according to Ferguson, it seeks a judgment

declaring: "(a) the WFDL applies in resolving the rights and obligations of the parties under the agreement; (2) the agreement's choice-of-law provision to the contrary is unenforceable; and (3) the appointment of an arbitrator licensed to practice law in Wisconsin is required to ensure the WFDL is applied knowledgeably and competently in resolving the parties' dispute." (*Id*.)  Ferguson asks the Court to enjoin Circle from terminating the parties' relationship pending arbitration and to preserve the status quo.  (*Id*.)

## I.      Availability of Injunctive Relief

Ferguson is correct in its assertion that district courts have the power to preserve the status quo, pending arbitration, through equitable relief.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 214 (7th Cir. 1993).  Circle, however, contends that this Court would exceed the proper limits of that power if it granted injunctive relief in the present circumstances.  Circle points out that not only has arbitration commenced between the parties, but the Agreement empowers the arbitrator to award injunctive relief.  (*See* Br. of Def. Circle Environmental, Inc. Opposing Pl.'s Mot. for Injunctive Relief and Pl.'s Requests for Decl. Relief ["Opp'n Br."] 2-3.)

Whether an arbitrator can award injunctive relief has no bearing on the Court's power to do the same.  Thus, Circle's second point is a red herring.  The disagreement between the parties boils down to *when* the Court's power to administer injunctive relief becomes limited by arbitral proceedings.  Ferguson filed a demand for arbitration with the American Arbitration Association on November 18, 2005.  However, as of December 28, 2005, Circle

2

had not yet filed an answer. Nor have the parties proposed an arbitrator. (Aff. of C. Jaekels ["Jaekels Aff."] ¶¶ 5, 7.) Thus, there is no arbitrator or arbitration panel that can provide Ferguson with injunctive relief at this point in time. So, Circle must be arguing that the mere filing of a demand for arbitration suspends a district court's injunctive powers. This position is not tenable. In this circuit, district courts may issue injunctions to preserve the status quo pending arbitration or an arbitrator's ability to entertain a request for injunctive relief. *See IDS Life Ins. Co. v. SunAmerica Inc.*, 103 F.3d 524, 527 (7th Cir. 1996).

Having determined that the filing of a demand for arbitration does not curtail Ferguson's ability to seek injunctive relief in this forum, the Court turns to the substantive merits of Ferguson's request.

## II.    Preliminary Injunction Analysis

The Court understands that "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller & M. Kane, <u>Federal Practice and Procedure</u>, § 2948 at 129-30 (2d ed. 1995)). A party seeking a preliminary injunction must substantially prove (1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if the preliminary injunction is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992) (citing *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir. 1986)). If either of these criteria is not satisfied, a court's analysis

3

ends and the request for a preliminary injunction should be denied. *Abbott Labs.*, 971 F.2d at 11. If the movant satisfies both of these requirements, the Court must then consider "the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied" and also the impact on the public interest or non-parties of granting or denying the injunction. *Id.* at 11-12 (citing *Lawson Prods., Inc.*, 782 F.2d at 1433; *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387-88 (7th Cir. 1984)). Next, the Court will weigh all four of the above-mentioned factors and utilize a "sliding scale" approach in deciding whether to issue the injunction. *Abbott Labs.*, 971 F.2d at 12 (citing *American Hosp. Supply Corp. v. Hospital Prods. Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986)).

### A.      Likelihood of Success on the Merits

The parties' arguments related to the request for injunctive relief rely on federal case law interpreting the WFDL. (Circle argues the point without conceding the WFDL's application.) Thus, the parties' positions imply that the Court's inquiry is whether Ferguson can prevail on its claim that the WFDL has been violated and injunctive relief is needed. However, Ferguson's request for a preliminary injunction does not ask the Court to assess the likelihood of success of a claim pending in this forum. Rather, the Court must assess the likelihood of success of those claims pending before an arbitrator. That arbitration, according to the terms of the Agreement, will be in South Carolina and pursuant to South Carolina law. So, the Court must determine which body of law the arbitrator should or will

4

apply. This is the very issue that Ferguson wishes to press in its request for declaratory judgment. Perhaps, Ferguson did not like the prospect of appearing before a South Carolina arbitrator applying South Carolina law without the protections afforded by the WFDL. At any rate, Ferguson's request for injunctive relief, much like its demand for arbitration filed with the American Arbitration Association, assumes that the arbitrator will apply the WFDL.

Neither party has explained what body of law the arbitrator will apply, or the analysis that he or she may employ to reach that conclusion. If Ferguson considered this question, its brief simply jumps to the assumption that the arbitrator must apply the WFDL. Circle never addresses this point either. When arguing against Ferguson's request for the injunction, Circle states that Ferguson cannot succeed "[e]ven if the arbitrator decides that the Wisconsin Fair Dealership Law applies . . . ." (Opp'n Br. 3.) Circle does not analyze which body of law the arbitrator should apply; rather, Circle only insists that the choice-of-law question should be answered by the arbitrator and not this Court.

Circle took a risk by accepting the grounds of argument offered by Ferguson in the motion for injunctive relief, i.e., the applicability of the WFDL. Circle did not argue, in the alternative, that the request for injunctive relief must also fail under South Carolina law. Nor did Circle argue that the arbitrator should properly apply South Carolina law. Circle put all of its eggs in one basket by arguing only that injunctive relief was unavailable to Ferguson. On this point it was mistaken; injunctive relief is available in this circuit. Because Circle has not argued that South Carolina law properly applies to the Agreement or that South Carolina

5

law is likely to be applied by the arbitrator, the Court finds that it has waived that argument at least for purposes of the Court's preliminary injunction analysis.

The present action was brought before this Court on the basis of diversity jurisdiction and, accordingly, the Court must apply the substantive law of the state in which sits. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The Court will also apply Wisconsin's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (1995). However, the law is settled that this Court must apply the provisions of the WFDL notwithstanding the choice-of-law provision in the Agreement. *See Generac Corp. v. Caterpillar, Inc.*, 172 F.3d 971, 975-76 (7th Cir. 1999) ("Moreover, the WFDL's announced purpose "[t]o govern all dealerships . . . to the full extent consistent with the constitutions of this state and the United States, Wis Stat.§ 135.025(2)(d), as well as the fact that its protections apply regardless of contractual choice of law, Wis Stat. § 135.025(3), further suggest that the Wisconsin legislature did not intend choice of law rules to apply to WFDL claims."). Assuming that Ferguson meets the statutory criteria to receive the protections of the WFDL, the Court will disregard the parties' prior agreement to apply South Carolina law.[1]

---

[1] Arguably, *Generac* not only dispatched with choice-of-law analysis when a party comes within the WFDL's purview, but also precluded conflict-of-law analysis such as that embodied in the Restatement (Second) of Conflict of Laws § 187 (1971). Section 187 states that a choice-of-law provision may be given effect unless:

> application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187 (1971). It would be strange for a Wisconsin state court, or this Court

Circle does not argue that its relationship with Ferguson substantively comes within the definitions set forth in the WFDL. In fact, it is silent on this point. Nevertheless, the Court finds that, based on the record before it, Ferguson is a "dealer" within the meaning of that term as set forth in section 135.02(2) of the Wisconsin Statutes. Likewise, Circle is a "grantor" as defined by section 135.02(5). The parties relationship, as evidenced by the Agreement, established a "dealership" within the purview of section 135.02(3). These findings may be subject to revision by the arbitrator as more information becomes available.

The Wisconsin Fair Dealership Law ("WFDL"), Chapter 135 of the Wisconsin Statutes, was passed with the intent of protecting dealers against unfair treatment by grantors. *See* Wis. Stat. § 135.025(2). Section 135.04 ("Notice of termination or change in dealership") requires grantors to provide a minimum notice of 90 days to dealers when instituting substantial changes in the competitive circumstances of dealerships. Wis. Stat. § 135.04. This same provision also provides for a 60-day cure period in which a dealer may attempt to remedy any deficiencies claimed by the grantor. *Id*.

On August 25, 2005, Circle sent a letter ("the letter") to Ferguson indicating that Circle intended to terminate the Agreement within 90 days unless certain conditions were

---

sitting in diversity, to disregard a choice-of-law provision that precluded application of the WFDL, while embracing a conflict-of-law analysis that might lead to the application of another state's substantive law in disregard of the WFDL. Thus, even if Circle had employed an analysis similar to Section 187 and concluded in compelling fashion that the arbitrator could properly apply South Carolina law, this Court, sitting in diversity, would still be compelled to find that Wisconsin law controlled. *See Bush v. Nat'l Sch. Studios, Inc.*, 407 N.W.2d 883 (Wis. 1987). It is interesting to contemplate how the inquiry would have proceeded had Circle filed, in South Carolina federal court, a request for a declaratory judgment that South Carolina law governs the parties' dispute. Presumably, the court, absent a statutory mandate similar to the WFDL, would have proceeded through conventional conflict-of-law analysis.

satisfied. (Compl. Ex. B.) Circle claims that the Agreement, attached to the Complaint as Exhibit A, requires Ferguson to average at least $400,000 in Gross Collected Sales in each of the three years prior to renewal of the Agreement. (Compl. Ex. A., 7.) The letter states that Ferguson's gross collected sales over the three-year period prior to the April 9, 2005 renewal date were $722,240. That total, according to the letter, is $427,760 less than the expected $1,200,000 gross collected sales over the same three-year period. The automatic renewal date of the Agreement was April 9, 2005. (Br. in Supp. of Mot. for Injunctive Relief ["Supp. Br."] 3.)

Ferguson argues that Circle's letter was well beyond the 90-day notice period provided by the WFDL. (Supp. Br. 3.) To be timely under section 134.04, the notice of nonrenewal must have been provided by January 9, 2005. Circle's letter, however, came several months later on August 25, 2005. Thus, Ferguson concludes, Circle's failure to provide timely written notice of nonrenewal constitutes a violation of the WFDL. (Supp. Br. 3.)

In the alternative, Ferguson argues that, even if Circle's notice were timely, its cure requirement is not reasonable, as required by section 135.04. Circle's letter requires Ferguson to cure three years' worth of deficient sales, to the tune of over $400,000, in sixty days. Ferguson argues that such a request, under Wisconsin law, is *per se* unreasonable.

Circles counters that Ferguson's failure to meet required sales quotas presents "a classic case of 'good cause' that justifies the termination of the business relationship."

8

(Opp'n Br. 3.)  Circle argues that its letter was both an opportunity for Ferguson to cure, and a termination letter, but not a letter of non-renewal.  Insofar as it was a termination letter, Circle implies that it could have sent the letter at any time, so long as the time frames in section 135.04 were observed.  As that argument goes, Circle did not have to send its notice of termination prior to the automatic renewal date of the Agreement.

Ferguson replies that Circle's attempts to recast its letter as one of post-renewal termination is disingenuous.  In support of its position, Ferguson points out that Circle, in the letter, invokes Section 6.2 of the Agreement, which states:

> Renewal.  Following expiration of the initial term as provided in Section 6.1 hereof, this agreement shall automatically renew for the successive renewal terms of five (5) years each . . . unless and until terminated under the provisions under Article VI; provided, however, that Licensor may elect not to renew this agreement for a new five year term if Licensee, at the time of renewal, is not in compliance with all of its obligations set forth in this agreement or has not generated Gross Collected Sales in the Territory averaging at least $400,000 in each of the three (3) years immediately prior to renewal.

(Compl. Ex. A, 7.)  Ferguson notes that the letter does *not* invoke any of the Agreement's termination provisions setting forth those grounds that the parties agreed would justify ending their relationship.  (*See id*.)

Ferguson continues that, even if the letter is construed as a post-renewal termination letter, it violates the Agreement because "none of the termination provisions in the License Agreement (sections 6.3, 6.4, and 6.5) allow Circle to terminate the License Agreement after renewal for failing to meet an 'annual average sales quota.'" (Reply Br. 4.)  Furthermore,

Ferguson argues that Section 6.2 of the Agreement only provides grounds for Circle to refuse renewal of the Agreement. (Reply 5.) Thus, since the Agreement has automatically been renewed for another five years, Circle cannot rely on the sales of the prior three years. "Under the contract term now in effect, Circle may terminate the License Agreement only if [Ferguson's] sales performance during the contract term April 9, 2005 through April 9, 2010 provides justification for doing so, within the terms of the License Agreement and consistent with the WFDL." (*Id*.)

The Court begins with the August 25, 2005 letter. Ferguson points out that Circle invokes the non-renewal clause of the Agreement in the letter, thus suggesting that the letter should properly be characterized as a notice of non-renewal. However, the letter predominantly uses "termination" language. In fact, the subject line of the missive reads "Re: Termination of April 9, 2000 License Agreement." In the first paragraph of the letter, Circle states that unless the requisite cure conditions are satisfied, the Agreement "will terminate (90) days from [Ferguson's] receipt of this letter." (Compl. Ex. B, ¶ 2.) Also, Circle identifies the "reasons for this termination . . . ." (*Id*. ¶ 3.) Later, Circle twice reiterates that the Agreement "will terminate" unless Ferguson rectifies the identified deficiencies. (*Id*. ¶ 6.)

Perhaps Ferguson believes that the dual reading of the letter is supported by Circle's explanation that Ferguson's failure to comply with sales requirements "constitutes good cause for the non-renewal or termination of the Agreement." This statement in context,

10

however, does not suggest that the letter may be characterized as either a non-renewal or termination notice. Circle seems to believe that Ferguson's failure to meet the criteria in Section 6.2 (the "Renewal" provision of the Agreement) provides an independent basis for terminating the Agreement. (*See* Opp'n Br. 4 ("Section 6.2 not only specifies conditions for renewal; it also sets forth an annual average sales quota.").) Based on the evidence before it and reading the August 25, 2005 letter as a whole, the Court understands that Circle's letter was intended as a notice of termination.

This leads the Court into Ferguson's alternative arguments, i.e., those arguments that assume that the letter may be characterized as a post-renewal termination notice. These arguments focus on the possibility that Circle's letter, at the very least, violates the terms of the Agreement. These arguments do not depend on the requirements of the WFDL, but rather focus on the possibility that Circle has breached the terms of the Agreement. This allegation is contained in the request for injunctive relief found in the demand for arbitration. (*See* Compl. Ex. A at 5, ¶ 20(a).) Circle states that the average sales term found in Section 6.2 of the Agreement provides grounds for termination and is a requirement of the contract. Circle does not argue that it may terminate its relationship with Ferguson based on other provisions in the Agreement. This position coincides with Ferguson's argument that the explicit termination provisions of the Agreement do not apply to the present facts. Insofar as Circle has implicitly accepted this position, the Court will not craft arguments on its behalf. For purposes of the pending motion, the Court will assume that Circle's power to

terminate the Agreement based on average sales derives only from Section 6.2 of the Agreement.

The wording of Section 6.2 allows Circle to refuse renewal of the Agreement if Ferguson "is not in compliance with all its obligations set forth in this Agreement **or** has not generated Gross Collected Sales in the territory averaging at least $400,000 in each of the three (3) years immediately prior to renewal." (Compl. Ex. A, 7) (emphasis added). The phrasing of this sentence–particularly the placement of the word "or"– suggests that the obligations set forth in the Agreement are distinct from the requirement of a certain level of average collected sales. The Court agrees with Ferguson that the plain wording of Section 6.2 does not support Circle's suggestion that the average gross collected sales figure in that section is a general sales obligation under the contract. Rather, that number, based on the wording of the section, is solely a measure upon which Circle may decide not to renew its agreement with Ferguson.

Finally, Ferguson argues that Circle has failed to establish "good cause" if the letter is construed as a post-renewal termination. Section 135.03 of the Wisconsin Statutes addresses the cancellation and alteration of dealership agreements. This portion of the WFDL prohibits grantors from terminating, cancelling, failing to renew or substantially changing the competitive circumstances of a dealership agreement absent good cause. *Id*. "Good cause" is defined as

"(a) Failure by a dealer to comply substantially with essential and reasonable requirements imposed upon the dealer by the grantor, or sought to be imposed

12

by the grantor, which requirements are not discriminatory as compared with requirements imposed on other similarly situated dealers either by their terms or in the manner of their enforcement; or (b) Bad faith by the dealer in carrying out the terms of the dealership."

Wis Stat. § 135.02(4). Thus, even if Circle has breached the explicit terms of the Agreement, he may still, pursuant to the WFDL, terminate the parties' relationship for "good cause." The burden is on the grantor to show good cause. *See* Wis. Stat. § 135.03.

Circle, though insisting in its brief, that its August 28th missive was a termination letter, does not address the issue of "good cause." Circle does discuss Ferguson's "failure to satisfy" the collected gross sales quota and presumably would claim that this deficiency satisfies the WFDL's "good cause" requirement. (Opp'n Br. 4.) As the prior analysis of the Agreement language has shown, Circle has not established that the Agreement contains a general gross collected sales quota. Nor has Circle carried its burden, for purposes of the pending request for injunctive relief, of establishing that the collective gross sales average was an "essential and reasonable" requirement of the parties' agreement. *See* Wis Stat. § 135.02(4)(a). Thus, based on the record before it, the Court cannot say that Circle has established good cause for its termination of the dealership.

Based on the foregoing, the Court finds that Ferguson has established a likelihood of success on its request for injunctive relief before the arbitrator based on its claim that Circle's actions contravene the WFDL and the plain terms of the Agreement.

13

**B. Inadequate Remedy at Law**

Ferguson claims that it will suffer irreparable harm if an injunction does not issue because (1) its reputation, as an exclusive Circle licensee, will be severely impacted; (2) it will lose almost 60% of its current business derived from the sale of Circle products; and (3) the loss of business and reputation cannot be compensated through monetary damages. Though certain of these points may be arguable, Circle, in its opposition brief, does not contest them. Insofar as these points are facially plausible and supported by affidavit, the Court finds that, based on the record before it, Ferguson will suffer irreparable harm, for which no adequate remedy is available at law if injunctive relief does not issue.

**C.     Harms to Non-Movant and Public**

Because Ferguson has satisfied the initial two criteria for injunctive relief, the Court must now consider "the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied" and also the impact on the public interest or non-parties of granting or denying the injunction. *Abbott Labs.*, 971 F.2d at 11-12 (citing *Lawson Prods., Inc.*, 782 F.2d at 1433; *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387-88 (7th Cir. 1984)). Circle has not identified any irreparable harm that it will suffer if Ferguson's request for injunctive relief is granted. At most, Circle will be encumbered for a bit longer with the claimed financial inadequacies of its dealer. That burden, however, is one that it has borne, according to its letter, for at least three years and does not qualify as irreparable injury.

14

The Court sees no harm to the public if the requested injunction issues. The public will still have access to the goods made available by Circle, via Ferguson. Arguably, greater harm might ensue if Ferguson's motion is denied. The public, as evidenced by the WFDL, has an interest in ensuring that grantors are constrained in their dealings with dealers.

## D.    Balancing of Factors

Next, the Court will weigh all four of the above-mentioned factors and utilize a "sliding scale" approach in deciding whether to issue the injunction. *Abbott Labs.*, 971 F.2d at 12 (citing *American Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986)). As the previous analysis indicates, all of the factors weigh towards issuing the injunction.

## E.    Security

Rule 65(c) of the Federal Rules of Civil Procedure states that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant" in the event that the party against whom the injunction is sought is ultimately determined to have been wrongfully restrained. This Court is mindful of the Seventh Circuit's instruction that "[w]hen setting the amount of security, district courts should err on the high side." *Mead Johnson & Co. v. Abbot Labs.*, 201 F.3d 883, 888 (7th Cir. 2000). Setting the amount of security too low may produce irreparable injury "because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Id*. (citations omitted). In other words, the bond set by this Court acts as a ceiling on Circle's recoverable damages in

15

the event they are found to have been wrongfully enjoined.  *See Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388, 1394 (7th Cir. 1992) (stating that the amount of an injunction bond places a ceiling on the damages that a defendant can obtain for the wrongful grant of an injunction, absent bad faith on the part of the plaintiff).  Though the bond sets an upper limit of damages, such damages must still be proved by Circle in the event it is vindicated.  *See American Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 597 (7th Cir. 1986).

Neither party has briefed the amount of security that should be posted by Ferguson.  The parties have also not informed the Court how the pending arbitration should affect the Court's security analysis.  Given the likelihood of success shown by Ferguson and the sparse defense raised by Circle, the Court will set a low bond of $500.  Insofar as this amount is set without the benefit of any substantive input from the parties, the Court will entertain motions for reconsideration of the security amount if the parties wish to present arguments on that point.  Given the pending arbitration, the parties will be responsible for following up and moving this Court, as appropriate and based on the outcome of the arbitration, to discharge the security.

16

In conclusion, Circle will be enjoined from terminating its dealership agreement with Ferguson until the arbitrator has ruled on Ferguson's requests found in its demand for arbitration.[2]

## III.  Requests for Relief

The parties have asked the Court to resolve Ferguson's request for declaratory relief simultaneously with its motion for injunctive relief.[3]  As previously indicated, Ferguson seeks declaratory judgment on three points: "(a) the WFDL applies in resolving the rights and obligations of the parties under the agreement; (2) the agreement's choice of law provision to the contrary is unenforceable; and (3) the appointment of an arbitrator licensed to practice law in Wisconsin is required to ensure the WFDL is applied knowledgeably and competently in resolving the parties' dispute."  (Compl. 1-2.)

The first two requests are intertwined.  Ferguson maintains that the WFDL governs the instant dispute and, therefore, South Carolina law–the law chosen by the parties to control the Agreement–cannot be applied.  Circle's argument is straightforward: This Court should

---

[2]Ferguson also asks the Court to enjoin Circle from "contacting any of [Ferguson's] customers."  (Compl. 7.) The complaint states that "[Ferguson] will suffer irreparable injury if Circle and any of its employees or agents are allowed to contact [Ferguson's] customers regarding Circle's threatened termination of the agreement and/or the status of [Ferguson's] Circle operations."  (*Id.* 6.)  The complaint explains that Circle's "usurpation" of Ferguson's clients would cripple its business.  (*Id.*)  Neither party has briefed this particular issue.  Ferguson has not provided affidavits or other proof that its business may suffer the adverse consequences it suggests.  The Court will not grant relief solely on the basis of the complaint; Ferguson has failed to carry its burden of persuasion on this point.  Furthermore, the Court would require more information to craft the requisite specific injunctive order.  Ferguson's request is too broad.  The Court does not know, for example, whether Circle has reasons to contact Ferguson's customers apart from discussing the potential termination of the Agreement.  An order to cease all communication might deprive Circle of necessary communications unrelated to the issues raised before this Court.

[3]Though Ferguson's supporting brief focuses exclusively on its request for injunctive relief, it takes up the issue of declaratory judgment in its reply.  Circle raised those issues in its response brief.  Thus, the parties have been afforded an opportunity to brief the relevant issues.

not decide which law applies because that is a matter related to the merits of the dispute between the parties and, thus, is properly an issue for arbitration. (Opp'n Br. 5.) Ferguson's response to this argument is not directly on point; it argues for the application of the WFDL without addressing whether this Court can even reach that question in light of the arbitration agreement. The issue is whether the Court may determine the validity of a choice-of-law provision in an agreement containing an arbitration clause referring all disputes related to the agreement to arbitration.

Because this is a case in diversity, the Court will apply the substantive law of Wisconsin but federal procedural law. A request for declaratory judgment is a procedural mechanism that relies, in this instance, upon substantive state law. *See Powers v. United States*, 218 F.3d 828, 829 (7th Cir. 1955) (explaining that the Declaratory Judgment Act did not create new substantive rights, but rather provided an additional procedural remedy); *Inst. for Studies Abroad Inc. v. Int'l Studies Abroad Inc.*, 263 F. Supp. 2d 1154, 1157 (7th Cir. 2001). Rule 57 of the Federal Rules of Civil Procedure provides that a party may obtain a declaratory judgment pursuant to Title 28 of the United States Code, Section 2201, which reads:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

18

Circle's sole attack against Ferguson's request for declaratory judgment centers on the argument that this Court should not decide the choice-of-law question because it arises out of the parties' agreement and all such disputes should be resolved by the arbitrator. The Court of Appeals for the Seventh Circuit broached a similar argument in *Stawski Distributing Co. v. Browary Zywiec SA*, 349 F.3d 1023, 1025 (7th Cir. 2003). In *Stawski*, the parties's beer distribution contract stated that disputes would be arbitrated in Poland under Polish law. *Stawski*, 349 F.3d at 1024. The brewer's attempt to terminate its relationship with the plaintiff distributor ran afoul of Illinois law. *Id*. The plaintiff sought an injunction compelling the defendant to continue providing beer; the defendant-brewer sought a stay of the litigation in favor of arbitration. The district court granted the injunction, but denied the request for a stay.

On appeal, the Seventh Circuit found that the contract's forum selection clause was enforceable while it's choice-of-law provision was not. *Id*. at 1026. The Court explained that "[n]either the Federal Arbitration act nor the New York Convention [an international treaty] provides any shelter for a choice-of-law agreement that otherwise would violate state rules forbidding parties to opt out of certain substantive norms." *Id*. at 1025. The choice-of-law clause was "invalid under Illinois law, which requires application of Illinois substantive law to Illinois distributorships." *Id*.

In *Stawski*, the Seventh Circuit was considering *international* arbitration and the effect of a choice-of-law provision that would have effectively removed substantive protections

19

provided to the plaintiff under Illinois law. Furthermore, in *Stawski*, the Court noted that the defendant did not raise any basis for insisting that Polish, rather than Illinois, law applied . *Id*. In the present circumstances, the arbitration contemplated is not international in nature, so *Stawski* is factually distinguishable. However, like the defendant in *Stawski*, Circle has not made any argument that South Carolina law should be given preference over Wisconsin law. More importantly, this Court understands *Stawski* as supporting the proposition that a choice-of-law clause will not be enforced if it circumvents those laws of a forum state that are applicable to the parties. During its analysis of the request for injunctive relief, this Court established that as a court sitting in diversity and applying Wisconsin law, the WFDL overrode the parties' agreement to apply South Carolina law. *Stawski* further establishes this Court's ability to establish the law applicable to the parties' agreement even though such a determination is arguably within the scope of the parties' agreement to arbitrate.[4]

Finally, the Court turns to Ferguson's request for an order appointing an arbitrator licensed to practice law in Wisconsin. This request will be denied. First, Ferguson has not provided the Court with any citation or statutory basis for exercising such authority. Second, the parties (or party) may make that request to the American Arbitration Association. There is no reason, at this point, for the Court to think that such a request will not be given serious consideration by that entity. As such, the Court's intervention at this point, even if

---

[4]Ferguson has not asked for an order that the arbitrator apply Wisconsin law. The Court will not address whether such an order is even within its powers. Neither the parties nor the Court have addressed the effect and binding power of the present decision and order, if any, on the arbitrator hearing the parties' dispute.

authorized, would be premature. Third, while certainly presenting its own nuances and difficulties, the WFDL is not so complex that only a Wisconsin attorney may be considered qualified to act as an arbitrator in a dispute involving that law.

_____**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Ferguson's request for injunctive relief is **GRANTED**.

Pursuant to Fed. R. Civ. P. 65(c), Ferguson, no later than January 25, 2006, shall post a bond of $500.00 with the Clerk of Court. With the posting of this bond, Circle is enjoined from terminating Ferguson's dealership until the arbitrator(s) in the pending arbitration rules on those requests for relief identified in Ferguson's Demand for Arbitration filed with the American Arbitration Association on November 18, 2005. In the event said bond is not posted by the close of business on January 25, 2006, the Court's order enjoining Circle will not go into effect.

The Court's injunction will cease to be in force once the arbitrator(s), in the pending arbitration between Circle and Ferguson regarding Circle's attempted termination of the parties' exclusive dealership agreement, rules on Ferguson's requests for relief contained in the Demand for Arbitration filed with the American Arbitration Association on November 18, 2005.

The Court declares that the choice-of-law provision found in the Exclusive License Agreement, entered into by Ferguson and Circle on April 9, 2000, is invalid under Wisconsin law and unenforceable.

The Court declares that the WFDL applies to the parties' dispute related to the legality of Circle's proposed termination of Ferguson's dealership.

The Court **DENIES** Ferguson's request to appoint an arbitrator licensed to practice law in Wisconsin.

The Court **DENIES** Ferguson's request to enjoin Circle from contacting its customers.

The Clerk of Court **SHALL** enter judgment accordingly.

Because this Order disposes of all pending matters in this case, the preliminary injunction hearing set for Friday, January 20, 2006, is cancelled.

Dated at Milwaukee, Wisconsin this 18th day of January, 2006.

**BY THE COURT**


s/ Rudolph T. Randa
**Hon. Rudolph T. Randa**
**Chief Judge**

22